Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Paul E. Plunkett | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 94 C 6535 | **DATE** | 12/8/2000 |
| **CASE TITLE** | CROWN CORR, INC. vs. WIL-FREDS CONSTRUCTION, INC., et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ■ Status hearing set for 1/10/01 at 9:15 A.M..
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: Goldberg's summary judgment motion is granted in part and denied in part and its motion to strike the affidavit of William T. Luxion is denied.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | number of notices: 5 | Document Number |
| | No notices required. | | |
| | Notices mailed by judge's staff. | DEC 11 2000 date docketed | |
| | Notified counsel by telephone. | | 167 |
| ✓ | Docketing to mail notices. | docketing deputy initials | |
| | Mail AO 450 form. | FILED FOR DOCKETING 00 DEC -8 PM 2:09 | |
| | Copy to judge/magistrate judge. | DEC 11 2000 date mailed notice | |
| TBK courtroom deputy's initials | | Date/time received in central Clerk's Office | mailing deputy initials |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CROWN CORR, INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 94 C 6535 |
| | ) | Paul E. Plunkett, Senior Judge |
| WIL-FREDS CONSTRUCTION, INC. | ) | |
| and BERTRAND GOLDBERG | ) | |
| ASSOCIATES, INC., and PUBLIC | ) | |
| BUILDING COMMISSION FOR THE | ) | |
| CITY OF CHICAGO | ) | |
| | ) | DOCKETED |
| Defendants. | ) | |
| | | DEC 11 2000 |

## MEMORANDUM OPINION AND ORDER

Before the Court are Defendant Bertrand Goldberg Associates' motion for summary judgment and motion to strike the affidavit of William T. Luxion. For the reasons provided in this Memorandum Opinion and Order, Bertrand Goldberg Associates' summary judgment motion is granted in part and denied in part and its motion to strike the affidavit of William T. Luxion is denied.

### Facts [1]

The following facts are undisputed unless otherwise noted. In 1988, the City of Chicago, acting through its Public Building Commission (the "City"), began planning for a new junior college to be named Wilbur Wright College. (Def.'s Summ. J. Mot. at 1.) Bertrand Goldberg Associates,

---

[1] Be advised that Local Rule 12 was changed to Local Rule 56.1 in September of 1999.

Inc., ("Goldberg") was hired as the architect and construction coordinator of the Wright Junior College Project ("Wright Project"). (Id.) On December 24, 1991, Goldberg was relieved of its duties as the construction coordinator for the Wright Project, and Morse Diesel International, ("Morse"), was retained as "owner representative" to complete the construction. (Def.'s 56.1(a)(3) Stmt. ¶ 1.) However, Goldberg retained certain construction coordination responsibilities pursuant to the terms of a modification to architectural professional services agreement. (Pl.'s 56.1(b)(3)(A) Stmt. ¶ 2.)

Wil-Freds was hired to construct all or a portion of all of the floors of the five buildings, as well as the site landscaping. (Def.'s Summ. J. Mot. at 2.) On May 13, 1993, Wil-Freds presented to Morse, as the owner's representative, a summary of claims arising out of Wil-Freds' participation in the Wright Project for which Wil-Freds claimed it was entitled to additional compensation. (Id. ¶ 8.) Morse analyzed Wil-Freds' claims and disagreed with many of the items of compensation which Wil-Freds claimed it was owed by the City. Wil-Freds' claims included loss of productivity, wage and benefit increases, and extended general conditions. (Id. ¶¶ 28-31, 34-37.) On September 12, 1995, after extensive negotiations, Wil-Freds and the City reached a compromise of Wil-Freds' claims, and entered into a settlement agreement. (Id. ¶ 40.) The settlement provided, inter alia, that Wil-Freds was to receive an additional sum of $720,000 "as full and complete settlement of all amounts claimed against the Commission . . . . [the City]" (Compare Def.'s 56.1(a)(3) Stmt. ¶ 41 with Pl.'s 56.1(b)(3)(A) Stmt. ¶ 41.) The settlement agreement included a table that allocated dollar amounts of the settlement into various categories. (Def.'s 56.1(a)(3) Stmt. ¶ 42.)

In this lawsuit, Crown Corr, which was a subcontractor of Wil-Freds, seeks damages arising from the delays in the Wright Project. (Def.'s 56.1(a)(3) Stmt. ¶ 5.) Crown Corr's claims are against both Wil-Freds and Goldberg who, it claims, were responsible for the delays that resulted in Crown Corr's damages. (Id.) Wil-Freds has filed a crossclaim and later an amended cross-claim alleging not only that Goldberg was solely responsible for Crown Corr's damages, but for those suffered by Wil-Freds as well. (Id. ¶ 6.) Wil-Freds is claiming approximately 3.5 million dollars in damages for delays allegedly caused by of the errors or omissions of Goldberg. (Id. ¶ 7.)

## The Legal Standard

Federal Rule of Civil Procedure 56(c) allows the Court to grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." In considering the evidence submitted by the parties, we do not weigh it or determine the truth of asserted matters. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). All facts must be viewed and all reasonable inferences drawn in the light most favorable to the non-moving party. Transamerica Ins. Co. v. South, 975 F.2d 321, 327 (7th Cir. 1992). "If no reasonable jury could find for the party opposing the motion, it must be granted." Hedberg v. Indiana Bell Tel. Co., Inc., 47 F.3d 928, 931 (7th Cir. 1995) (citing Anderson, 477 U.S. at 248).

## Discussion

Before going into the merits of Goldberg's motion for summary judgment, we must first address its motion to strike the affidavit of William T. Luxion. Goldberg's argument is twofold. First, Goldberg argues that the affidavit is not based on Luxion's personal knowledge. Fed. R. Civ. P. Rule 56(e) states that "affidavits shall be made on personal knowledge . . . ." While Goldberg is correct that nowhere on the face of the affidavit does Luxion specifically state that the affidavit is based on personal knowledge, we find that there are sufficient facts contained in the affidavit to support a finding that the statements made therein were based on Luxion's personal knowledge. The affidavit states that Luxion is the president of Wil-Freds, and that he participated in the settlement discussions, which are the subject matter of his sworn statements. Thus, his affidavit is based on personal knowledge.

Second, Goldberg contends that the Luxion affidavit contains inadmissible hearsay. Fed R. Civ. P. Rule 56(e) states that an affidavit can only "set forth such facts as would be admissible in evidence . . . ." Paragraph 4 and the first sentence of Paragraph 6 contain evidence of statements made by the City's representative during the Wil-Freds' settlement negotiations. The challenged statements are to the effect that the City's representative assured Wil-Freds that the allocations were made solely for the City's own bookkeeping records. If these statements were offered for their truth, they would clearly be hearsay. However, Wil-Freds contends that they are offered to show the effect they had on the its representative, i.e., leading him to believe the allocation of funds to various claims in the release would have no legal effect on claims Wil-Freds might have against others for similar or identical claims. In other words, these out-of-court assertions are relevant to show what Wil-Freds thought the agreement meant. Viewed in this light, the statements are not hearsay, but

as we will see shortly, that is small solace to Wil-Freds because the parol evidence rule blocks its claim. Thus, we deny the motion to strike any assertions in the affidavit. We now turn to the merits of Goldberg's motion for summary judgment.

Goldberg's summary judgement motion raises the following issues: (1) whether the "release" provision in the Wil-Freds/City settlement agreement precludes Wil-Freds from asserting any claims against Goldberg; and (2) assuming Wil-Freds can seek recovery for damages from Goldberg, whether Wil-Freds has already been compensated for any of those damages in the Wil-Freds/City settlement agreement.

### 1. Whether the "release" provision in the Wil-Freds/City settlement agreement precludes Wil-Freds from asserting any claims against Goldberg.

Goldberg claims that the "release" provision of the Wil-Freds/City settlement agreement precludes Wil-Freds from recovering any damages from Goldberg. We disagree. Illinois law recognizes that a release is a contract, and the interpretation and construction of its terms are governed by the rules of contract law. Affiliated Realty & Mortgage Co. v. Jursick, 17 Ill. App. 3d 146, 150, 308 N.E.2d 118, 122 (1st Dist. 1974). Where the terms of the release are unambiguous, the intent of the parties must be discerned from the language of the release itself, without reliance on any parole evidence. Rakowski v. Lucente, 104 Ill.2d 317, 322, 472 N.E.2d 791, 794 (1984).

The terms of the "release" as set out in the Wil-Freds/City settlement are unambiguous. As stated above, the "release" provides that "the Commission agrees to pay to Wil-Freds the sum of $720,000 as full and complete settlement of all amounts claimed <u>against the Commission</u> . . . ." (emphasis added) (Def.'s Ex. B at 4). Furthermore, the settlement agreement provides that "[s]pecifically excluded from the forgoing release and waiver are any claims, demands or actions that

Wil-Freds has or may have against any other entity not a party to this Settlement Agreement." (Id. at 5.) In other words, the "release" only releases any and all claims that Wil-Freds has against the City, not Goldberg. Thus, the "release" of the Wil-Freds/City settlement agreement not only states it is solely releasing the City, it also makes clear that it does not affect claims against any other possible defendants.

### 2. Has Wil-Freds already been compensated for any of those damages claimed against Goldberg pursuant to its settlement with the City?

In support of its motion, Goldberg directs this Court to take into account the allocation table of the Wil-Freds/City settlement agreement. The allocation table breaks down the lump sum payment of $720,000 into several categories of payments to Wil-Fred's claims. In particular, the allocation table lists categories of recovery with dollar amounts for a wage and benefit increases claim, and an extended general conditions claim. Goldberg argues this allocation is binding on Wil-Freds.

Wil-Freds asserts that we cannot use the allocation table for purposes of assessing whether Wil-Freds has already recovered money for its current claims against Goldberg. Wil-Freds points to the affidavit of William T. Luxion, the president of Wil-Freds, in which he claims that during the settlement discussions the City told him that the purpose of the allocation table was only for the City's bookkeeping. In other words, Wil-Freds asserts that it received $720,000 under the settlement agreement which it could allocate any way it wanted. Wil-Freds' position, while having a certain appeal, runs head on into the parol evidence rule.

Under Illinois law, if a contract is in writing, is unambiguous, and contains no uncertain terms, interpretation of the contract is a question of law for the court, and no evidence outside the

-6-

four corners of the contract may be employed to construe its terms. <u>United States v. 4500 Audek Model Number 5601 AM/FM Clock Radios</u>, 220 F.3d 539, 542 (7th Cir. 2000). The settlement agreement provides under the caption of "Settlement of Claims" that "the Commission agrees to pay to Wil-Freds the sum of $720,000 . . . Exhibit "B" provides an allocation of the settlement amount." (Def.'s Ex. B at 4). By signing the writing, Wil-Freds unambiguously accepted the allocations as set forth in Exhibit B of the settlement agreement. Therefore, Wil-Freds is precluded from admitting evidence outside the four corners of the settlement agreement to contradict or explain its terms, and Wil-Freds is bound by the terms as outlined in the agreement.

The issue then becomes whether any of the claims Wil-Freds has asserted against Goldberg have already been fully or partially satisfied by the Wil-Freds/City settlement agreement. The damages Wil-Freds seeks from Goldberg can be divided into two categories: (1) claims against Goldberg that were provided for in the allocation table of the Wil-Freds/City settlement agreement; and (2) claims against Goldberg that were not provided for in the allocation table of the Wil-Freds/City settlement agreement.

(1) <u>Claims against Goldberg that were provided for in the allocation table of the Wil-Freds/City settlement agreement</u>.

The allocation table of the settlement agreement provided that $69,707 of the $720,000 goes towards the wage and benefit increases claim and $188,500 of the $720,000 goes towards the extended general conditions claim.

Wil-Freds sought $165,744 from both the City and Goldberg for wage rate increases. There is no evidence in the record to indicate that Wil-Freds' wage rate increases claims against Goldberg is any different from its wage rate increases claim against the City. According to the terms of the

-7-

settlement agreement, $69,707 of the $720,000 was allocated as wage rate increases damages. As such, we find that any recovery Wil-Freds would receive from Goldberg for wage rate increases must be offset by $69,707.

Wil-Freds sought $1,331,683 from the City and seeks $1,000,429 from Goldberg for extended general conditions. There is no evidence in the record to indicate that Wil-Freds' extended general conditions claim against Goldberg is any different from its extended general condition claim against the City. Wil-Freds only argument is that because the settlement agreement was for a "lump sum", and because it is not bound by the allocation table, it can allocate the money received in any fashion it wants. We disagree. As stated above, the allocation table is binding on Wil-Freds. According to the terms of the settlement agreement, $188,500 was allocated as extended general conditions damages. As such, we find that any recovery Wil-Freds would receive from Goldberg for extended general damages must be offset by $188,500.

(2) <u>Claims against Goldberg that were not provided for in the allocation table of the Wil-Freds/City settlement agreement.</u>

Wil-Freds seeks $745,542 from Goldberg for lost productivity, $64,072 for additional winter protection, $701,798 for extra home office support, and $821,671 for working capital.

With regard to the claims for lost productivity and for additional winter protection, there is a genuine issue of material fact precluding summary judgment. In Luxion's affidavit, he states that all claims besides those relating to wage and benefit increases and for extended general conditions were not compensated for in the Wil-Freds/City settlement agreement. In addition, he also states "[t]hat in formulating its current claims against the Goldberg, Wil-Freds has taken into account all amounts paid by the City in connection with the Settlement Agreement and Mutual Releases." This

-8-

evidence is sufficient to deny Goldberg summary judgment on these claims. Therefore, no offset need be made as a matter of law at this time to any recovery Wil-Freds obtains from Goldberg for lost productivity or additional winter protection.

Wil-Freds seeks $701,798 from Goldberg for extra home office support. Goldberg has asserted three arguments in favor of its motion for summary judgment on this issue. First, Goldberg argues that Wil-Freds' extra home office support claim against Goldberg is precluded by the Wil-Freds/City settlement agreement. As stated above, any claims released by Wil-Freds against the City do not preclude Wil-Freds from seeking compensation from Goldberg. Second, Goldberg argues that Wil-Freds' extra home office support claim is precluded by a provision of Wil-Freds contract with the City. This argument is without merit because the contract only precludes claims brought by Wil-Freds against the City for extra home office support.

Finally, Goldberg argues that, assuming Wil-Freds is not precluded from bringing an extra home office support claim, the amount Wil-Freds seeks from Goldberg is inaccurate. Goldberg argues with respect to this claim that Wil-Freds has used the wrong starting date in calculating its damages, i.e., utilizing the contract award date as opposed to the notice to proceed date. Goldberg cites <u>Barnet Brezner</u> for this proposition. <u>Appeal of Barnet Brezner</u>, 1962 B.C.A. § 3381 (1962)(court held that the appropriate starting date to be used in computing damages is the date of the notice to proceed). Goldberg also argues that the appropriate time period to be used is the contract period plus any extensions allowed, citing <u>Appeal of Dawson Construction</u>, 79-2 B.C.A. § 13,989 (1979)(court held that the appropriate time period to be used in computing damages is the contract period plus any extensions allowed). Contrary to Goldberg's proposed method of

calculation, Wil-Freds calculation starts at the date for award of the contract and assumes a reasonable time thereafter for issuance of the notice to proceed.

Although we find the propositions in <u>Barnet Brezner</u> and <u>Dawson Construction</u> persuasive, we find the facts of this case are distinguishable. Part of Wil-Freds' claim against Goldberg for extra home office support is premised on the allegation that certain notices to proceed were unreasonably delayed because of Goldberg's failure to coordinate the Wright Project properly. Based on this allegation, it would be unreasonable to require Wil-Freds to compute damages beginning with its receipt of the notice to proceed. Therefore, we find the starting date utilized by Wil-Freds reasonable.

In light of the facts of this case, we also disagree with Goldberg that the proper time to be employed is the contract period plus any allowable extensions. Unlike <u>Dawson Construction</u>, this is not a breach of contract case whereby a contractor is suing an owner for delay damages. This case involves a contractor (Wil-Freds) suing a construction coordinator (Goldberg) for delay damages. Therefore, the appropriate time period to be utilized to determine extra home office support damages is the equitable standard already applied by Wil-Freds.

Wil-Freds seeks $821,671 from Goldberg for working capital. Both parties agree that Wil-Freds' working capital claim is valid as long as all of its earlier claims are valid. Because we find some of Wil-Freds' claims are without merit, its working capital claim will have to be adjusted to reflect these changes.

## Conclusion

For the reasons stated herein, Goldberg's summary judgment motion is granted in part and denied in part and its motion to strike the affidavit of William T. Luxion is denied.

**ENTER:**

_____
UNITED STATES DISTRICT JUDGE

DATED: 12-8-00